UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS C. KELLY, | |
| Plaintiff, | No. C 05-01789 MHP |
| v. | |
| KAISER FOUNDATION HOSPITALS, INC.; KAISER FOUNDATION HEALTH PLAN, INC.; KAISER PERMANENTE GROUP; TOM LONG; MARIO CASTANEDA; and Does 1 through 10, inclusive, | **MEMORANDUM & ORDER**<br>Re: Motion to Dismiss, Motion for Sanctions |
| Defendants. | |

Plaintiff Thomas C. Kelly filed this action against defendants Kaiser Foundation Hospitals, Inc. et al. (collectively, "Kaiser"), seeking damages arising out of defendants' alleged discrimination against plaintiff based on his age and disability. Now before the court are defendants' motion to dismiss plaintiff's First Amended Complaint for failure to state a claim on which relief can be granted and defendants' motion for sanctions based on plaintiff's alleged failure to provide the initial disclosures required by the Federal Rules of Civil Procedure. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiff is a procurement analyst, employed by defendant Kaiser Foundation Hospitals, Inc. for the past seventeen years. First Amended Complaint ("FAC") ¶ 1. Plaintiff claims to suffer from a number of disabilities, including back pain and vision impairment. Id. As a result of his

disabilities, plaintiff has historically been permitted to perform some of his job responsibilities from home.

The conflict giving rise to this lawsuit began in April, 2004 when a new supervisor, Tom Long, was appointed to manage plaintiff's department. Id. ¶ 13. According to plaintiff, Long refused to allow plaintiff to continue to work from home and began to harass plaintiff, allegedly in order to force plaintiff to take early retirement. Id. Long also refused to compensate plaintiff for any time worked at home, or for time plaintiff spent attending medical appointments. Id. Plaintiff ceased coming to work at the end of 2004, and defendants ceased paying plaintiff's salary in January 2005. Id. ¶ 17. Plaintiff continued to work from home until April 2005, at which time he was told by Long to stop. Although plaintiff no longer performs work for defendants, he claims that he is still employed by them. Id. ¶ 1. Plaintiff applied for and obtained state disability coverage in February 2005 as a result of his inability to work for defendants. Id. ¶ 15.

Plaintiff filed this lawsuit on April 29, 2005, alleging age and disability discrimination, retaliation, ERISA violations, and violations of state wage and hour law. The parties' initial disclosures under Rule 26(a) were due on August 22, 2005, but plaintiff failed to serve defendants with the complaint until after that date. The initial case management conference was subsequently rescheduled three times, eventually taking place on November 28, 2005.

The parties agreed to exchange their Rule 26(a) disclosures by November 3, 2005. On November 3, defendants served plaintiff with their initial disclosures, including supporting documents. Plaintiff did not serve any disclosures or documents at that time.

At the November 28, 2005 case management conference, the court pointed out numerous deficiencies in plaintiff's original complaint and ordered plaintiff to file a properly drafted complaint within twenty-one days. The court also ordered plaintiff to provide his initial disclosures on the same date.

Plaintiff in fact did not file or serve defendants with the First Amended Complaint until January 5, 2006, seventeen days after the date ordered by the court, and still failed to provide any initial disclosures. On January 22, 2006, one day before the next scheduled case management

2

conference, plaintiff provided defendants with a very cursory initial disclosure statement, but no documents. At the case management conference, the court admonished plaintiff a second time and ordered the parties to meet and confer to establish a date for plaintiff's initial disclosures. Plaintiff subsequently agreed to produce documents in support of his claims by February 6, 2006—three days before the parties' scheduled mediation. Plaintiff again failed to produce any documents. Instead, plaintiff brought a disorganized and incomplete set of state disability payment checks to the February 9 mediation. Plaintiff did not actually supply copies of any documents to defendants until March 1, 2006.

Defendants now move to dismiss several of the claims in plaintiff's First Amended Complaint and for sanctions arising from plaintiff's delay in providing the disclosure required by Rule 26.

LEGAL STANDARD

I. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

II. Discovery Sanctions

Federal courts have the authority to sanction litigants for discovery abuses both under the Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of the

3

judicial process. See Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991); In re Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986). Specifically, where a party fails to comply with a discovery order, Federal Rule of Civil Procedure 37 authorizes the court to impose a range of sanctions, including, *inter alia*, taking facts as established, precluding evidence, and dismissing the action or entering default judgment. Fed. R. Civ. P. 37(b)(2). Under Rule 37, the standard for sanctionable misconduct is generally one of objective unreasonableness. Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978). The decision to impose sanctions under Rule 37 lies within the sound discretion of the district court. Payne v. Exxon Corp., 121 F.3d 503, 510 (9th Cir. 1997).

DISCUSSION

I.    Motion to Dismiss

Defendants seek to dismiss several of plaintiff's claims for based on a variety of alleged deficiencies. The court will consider each claim in turn.

   A.    Title VII and FEHA

Plaintiff's third claim for relief alleges age and disability discrimination against all defendants under Title VII and California's Fair Employment and Housing Act ("FEHA"). The parties agree that Title VII does not prohibit discrimination based on age or disability. See 42 U.S.C. § 2000e-2(a)–(d). To the extent that plaintiff's third claim depends on Title VII, it is therefore dismissed with prejudice.

Defendants also point out that an individual cannot be liable for discrimination under FEHA. Reno v. Baird, 18 Cal. 4th 640, 663 (1998) ("we conclude that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts."). Plaintiff conceded this point at oral argument. Accordingly, plaintiff's discrimination claims under FEHA against defendants Castaneda and Long are dismissed with prejudice. Plaintiff's FEHA retaliation claims against the individual defendants, however, may proceed after being clarified based on the requirements the court sets forth below.

4

B.    California Labor Code

Plaintiff's fifth claim for relief, which he incorrectly labeled as his fourth claim, alleges violations of California Labor Code sections 201, 202, 218, 1102.5, and 1194.

Sections 201 and 202 impose so-called "waiting time penalties" on employers that withhold payment of wages owed to an employee who is discharged or quits. Defendants argue that sections 201 and 202 are inapplicable to plaintiff, who according to his own allegation is still employed by Kaiser Foundation Hospital, Inc. FAC ¶ 1. Plaintiff responds that he is merely "technically" employed by defendants, and that he has been constructively discharged as a result of defendants' refusal to pay his wages. A constructive discharge, however, occurs when "the employer's conduct effectively forces an employee to resign." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244–45 (1994). Here, there is no allegation that plaintiff has resigned or been terminated. The parties' representations at oral argument are fully consistent with plaintiff's claim that he is still employed by defendants; at oral argument plaintiff conceded that he has remained on Kaiser's payroll throughout the course of this litigation, and received a paycheck only weeks prior to the hearing. Plaintiff's argument that he is only "technically" employed is therefore absurd. Plaintiff's claims under sections 201 and 202 are dismissed without prejudice, subject to reinstatement if plaintiff is actually terminated or quits.

Section 218, titled "Authority of district attorney and wage claimant," states that "Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article." As defendants correctly point out, this language does not establish a separate cause of action, but rather preserves the right of a wage claimant to sue for wages due "under this article"—i.e., set forth in other sections which define actionable violations. Plaintiff's claim under section 218 is therefore dismissed with prejudice.

Finally, section 1102.5 prohibits retaliation against whistleblowers—employees who report violations of law to state or federal governmental agencies. In order to state a claim under section 1102.5, plaintiff must allege that he engaged in protected activity, such as disclosing a violation of law to a governmental agency. See Cal. Labor Code § 1102.5(b) ("An employer may not retaliate

5

against an employee for disclosing information to a government or law enforcement agency."); Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) (Jenkins, J.) (plaintiff must disclose to a government or law enforcement evidence of activity which violates a federal or state law). Plaintiff concedes that the current complaint does not mention any government or law enforcement agency, but argues that he "could insert the date the EEOC complaint was filed in the FAC to show reporting to a law enforcement agency under Labor Code Section 1102.5." Brief in Opposition at 8. The fact that plaintiff "could" do so is irrelevant to defendants' motion to dismiss, which is based on the current complaint.

The court also notes that plaintiff's whistleblower claim, to the extent it is based on reporting his supervisor's discrimination to the EEOC, is nearly indistinguishable from his FEHA discrimination and retaliation claims. If plaintiff wishes to pursue a whistleblower claim that is distinct from his FEHA claims, he must articulate a separate factual basis. Plaintiff's current claim, which appears to be based solely on his complaint to the EEOC, is dismissed with prejudice. This dismissal does not preclude plaintiff from bringing a distinct whistleblower claim if he is able to do so.

### C. ERISA

Plaintiff's sixth claim for relief, which he incorrectly labeled as his fifth claim, is purportedly brought under ERISA. The claim as drafted is totally incoherent, and does not cite any meaningful portion of the ERISA statute. The only statute cited by plaintiff—29 U.S.C. § 11329(a)(3)(B) [sic: 1132(a)(3)(B)]—provides only that "A civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Plaintiff does not identify, however, which provision of ERISA has been violated. Nor has plaintiff alleged facts which might support a valid ERISA claim; the current complaint contains no allegation that plaintiff applied for benefits and was denied, or that he requested information from the plan administrator and was denied.

The court already pointed out precisely these deficiencies in plaintiff's complaint at the November 28, 2005 case management conference. Plaintiff's amendment does nothing to correct them. The court will grant plaintiff one further opportunity to state a viable ERISA claim, but cautions plaintiff that further disregard of the court's orders will result in an appropriate sanction.

As a final note, defendants argue that plaintiff has not named the plan administrator in his current complaint, and that the plan administrator is the proper defendant in an ERISA claim. To the extent that the identity of the proper defendant is unclear, defendants are ordered to provide clarification to plaintiff before plaintiff files his second amended complaint. Plaintiff's current ERISA claim is dismissed without prejudice.

D. Constructive Discharge

Plaintiff's seventh claim for relief, which he incorrectly labeled as his sixth claim, alleges that he has been constructively discharged. As discussed above, plaintiff also alleges that he is still employed by Kaiser Foundation Hospitals. Thus, he cannot state a claim for constructive discharge. See Turner, 7 Cal. 4th at 1244–45. Plaintiff may only state a claim for constructive discharge if he has resigned or been terminated. Plaintiff's sixth cause of action is therefore dismissed.

E. Negligent and Intentional Infliction of Emotional Distress

Plaintiff's "Seventh" and "Eighth" causes of action (actually, claims eight and nine) allege that defendants intentionally or negligently caused plaintiff emotional distress by making comments about his age and disability and by refusing to make reasonable accommodations. Defendants argue that claims such as those raised by plaintiff are barred by the exclusivity provision of California's Workers' Compensation law, California Labor Code section 3600(a). Defendants cite Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 160 (1987), in support of their argument:

> [W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair,

7

>outrageous, harrassment, or intended to cause emotional disturbance resulting in disability.

Plaintiff argues that claims of intentional or negligent infliction of emotional distress which are rooted in discrimination are not barred, citing Fretland v. County of Humboldt, 69 Cal. App. 4th 1478 (1999) and Maynard v. City of San Jose, 37 F.3d 1396 (9th Cir. 1994).

Maynard indeed holds, broadly, that tort claims rooted in violations of public policy are not barred by California's Workers' Compensation law. "Personal injury claims that implicate fundamental public policy considerations are not preempted by the Workers' Compensation Act." Id. at 1405 (citing Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1101 (1992), overruled on other grounds by Green v. Ralee Eng'g Co., 19 Cal. 4th 66 (1998)). The issue in Gantt was narrower than the Ninth Circuit suggests: whether an employee wrongfully *discharged* in violation of public policy may pursue tort claims against the employer. Gantt, 1 Cal. 4th at 1101 ("we hold that the Workers' Compensation Act does not preempt plaintiff's Tameny action for tortious discharge in contravention of fundamental public policy."). The Gantt court did, however, distinguish Cole, the case cited by defendants: "Nevertheless, we also recognized in Cole that the scope of the Workers' Compensation Act is not universal. . . . The exclusive remedy provisions are not applicable under certain circumstances, sometimes variously identified as 'conduct where the employer or insurer stepped out of their proper roles.'" Id. at 1100 (internal citation and quotations omitted). The Gantt court found that acts based on "an animus that violates the fundamental policy of this state" fall outside of normal employer-employee relations, and therefore are not covered by workers' compensation. Id. It is possible to read this language, as the Ninth Circuit already has, as permitting tort recovery for conduct which is based on discrimination.

Defendants argue, in the alternative, that plaintiff's tort claims should be dismissed to the extent they are based on conduct other than discrimination. It is not the court's role on a motion to dismiss, however, to decide what evidence plaintiff may present in order to establish his claims. Defendants' argument should be reserved for summary judgment or a motion in limine.

8

Finally, the court notes that plaintiff's claim for negligent infliction of emotional distress is not cognizable as a separate tort under California law. See, e.g., Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993) ("there is no independent tort of negligent infliction of emotional distress."); Burgess v. Superior Court, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized the negligent causing of emotional distress is not an independent tort, but the tort of negligence.") (internal quotation omitted); Lawson v. Management Activities, Inc., 69 Cal. App. 4th 652, 656 (1999) ("NIED is simply a species of negligence."). In order to recover emotional distress damages arising out of defendants' negligence, plaintiff must establish the traditional elements of a tort: duty, breach of duty, causation and damages. See id. at 657. Plaintiff is therefore ordered to redraft his claim for negligent infliction of emotional distress as a properly pleaded negligence claim.

Defendants' motion to dismiss plaintiff's intentional and negligent infliction of emotional distress claims with prejudice is therefore denied. Plaintiff's claim for negligent infliction of emotional distress is dismissed without prejudice, subject to amendment as specified above.

### F.    Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiff's claim for breach of the covenant of good faith and fair dealing fails because, under California law, the covenant arises only where there is a contract between the parties, and does not expand the rights of the parties under that contract. See Guz v. Bechtel Nat., Inc., 24 Cal. 4th 317, 322 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."). According to defendants, plaintiff has not alleged the existence of a contract between the parties, or that defendants have breached it.

Plaintiff responds that there need not be a contract in order to assert a claim for breach of the covenant of good faith and fair dealing, citing Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264 (9th Cir. 1990). Comeaux considered whether an at-will employee could sue for unlawful

9

discharge based on a breach of the covenant of good faith and fair dealing.  The court held that the plaintiff could not "transform a terminable-at-will employment contract into a terminable-only-for-cause employment contract by construing a discharge without cause as a breach of the covenant," but noted that "[t]he implied covenant, however, remains available as a cause of action, even in the face of an at-will employment contract, where a plaintiff alleges that conduct other than his discharge violated the covenant." Id. at 1272.  In other words, although an at-will employee does not have a contractual right to continued employment, there may be other contractual rights which, if violated, would support a claim under the covenant.  Nothing about this holding conflicts with defendants' position.  In any case, Comeaux was decided ten years before Guz, which disapproved of the notion that the covenant confers extra-contractual rights on an employee:  "the implied covenant of good faith and fair dealing imposes no independent limits on an employer's prerogative to dismiss employees."  Guz, 24 Cal. 4th at 351; see id. at 353 ("there is no tort of 'bad faith breach' of an employment contract.").

While plaintiff may be able to state a claim for breach of the covenant based on actions other than termination, the First Amended Complaint contains no allegations about the existence or scope of any contract between the parties.  Plaintiff's claim for breach of the covenant of good faith and fair dealing is therefore dismissed without prejudice.

### G.     More Definite Statement

Defendants also move, in the alternative, for a more definite statement as to each of plaintiff's claims.  As the court has granted defendants' motion to dismiss with respect to most of plaintiff's claims, defendants' request is largely moot.

In addition to the specific deficiencies already discussed, however, defendants claim that certain of plaintiff's claims are compound and difficult to decipher.  For example, plaintiff's second claim alleges violations of the Americans' with Disabilities Act, FEHA, the Family Medical Leave Act, and the California Family Rights Act.  Federal Rule of Civil Procedure 10(b) requires that "[e]ach claim founded upon a separate transaction or occurrence and each defense other than denials

10

1  . . . be stated in a separate count or defense whenever a separation facilitates the clear presentation of
2  the matters set forth." The court finds that separation of plaintiff's claims would lend clarity to the
3  complaint. When plaintiff files his amended complaint, he should take care to spell out each claim
4  individually, and should ensure that the facts alleged meet the requirements of each claim
5  individually.

II.  <u>Motion for Sanctions</u>

Federal Rule of Civil Procedure 26 sets forth broad categories of information and documentation which the parties are required to exchange, even in the absence of a specific discovery request. Rule 26(a), in particular, requires that a party seeking damages provide

> a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Plaintiff does not dispute that he repeatedly failed to produce documents supporting his claim for damages until March 1, 2006, in violation of his agreement with opposing counsel and this court's order of November 28, 2005. Plaintiff failed to produce any disclosure at all until January 22, 2006—over one month later than ordered by this court. As explored at oral argument, plaintiff's January 22 disclosure is woefully inadequate, comprising a list of witnesses with no indication as to each witness's knowledge or expected areas of testimony.

Also at oral argument, however, it became clear that defendants likewise produced certain important documents at the time of the mediation. In addition, defendants, as plaintiff's employer, already have some documentation in their possession which indicates the likely magnitude of plaintiff's claim for compensatory damages. The court therefore declines to impose sanctions at this time.

Plaintiff's failure to produce his required disclosures in a timely fashion is certainly troubling. Counsel for plaintiff has known of the need to collect and produce documents supporting plaintiff's damages claim since at least April 2005—a full ten months before the documents were

11

actually produced. The failure of plaintiff's counsel to do so has caused defendants to spend needless time issuing requests for the documents, wasted the resources of this court and seriously undermined the productivity of the February 9, 2006 mediation. Plaintiff is therefore ordered to complete his required initial disclosures, including an updated witness list with meaningful information about each witness's knowledge, within two weeks of the hearing for this motion. If plaintiff fails to complete his required disclosure, the court will seriously consider imposing monetary sanctions against plaintiff's attorney.

### III. Other Matters

Two other matters arose at oral argument which should be memorialized or clarified in this order. First, defendants agreed to file with the court within two weeks of the hearing copies of defendants' payroll records for plaintiff, accompanied by an authenticating declaration and an explanation of how to read the records. The court ordered defendants to do so in the minute order for the hearing, and confirms that order here.

Second, defendants requested clarification as to the date by which the corporate defendants will be required to answer plaintiff's complaint. Defendants shall file a responsive pleading within 30 days of the filing of plaintiff's second amended complaint.

CONCLUSION

For the foregoing reasons, the court hereby GRANTS IN PART defendants' motion to dismiss plaintiff's First Amended Complaint, as set forth in more detail above. The court DENIES defendants' motion for sanctions. Plaintiff shall file an amended complaint conforming with the court's ruling within 30 days of this order. Defendants shall file a responsive pleading within 30 days of the filing of the amended complaint. Defendants also shall file with the court copies of plaintiff's payroll records no later than April 24, 2006. Plaintiff shall serve defendants with an amended witness list, including summaries of the witnesses' knowledge and expected testimony, no later than April 24, 2006.

IT IS SO ORDERED.

Dated: April 18, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# **ENDNOTES**

1. Unless otherwise specified, background facts are taken from plaintiff's First Amended Complaint, and are assumed to be true for purposes of this motion only. Facts pertaining to discovery exchanged by the parties are taken from the declarations accompanying these motions.